DAVID H. KRAMER, State Bar No. 168452
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com; aweibell@wsgr.com;

*Attorneys for Nonparty*
SYMANTEC CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:<br><br>TARGET CORPORATION CUSTOMER DATA SECURITY BREACH LITIGATION | MISC. CASE NO.: 14-mc-80302<br><br>Underlying Case No. 14-md-02522-PAM pending in the District of Minnesota ("the Underlying Action")<br><br>**SYMANTEC CORPORATION'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER**<br><br>Date:   TBD<br>Time:   TBD<br>Judge:  TBD |

**TABLE OF CONTENTS**

<u>Page</u>

NOTICE OF MOTION AND MOTION ................................................................................................iii

STATEMENT OF THE ISSUES ..........................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

INTRODUCTION.....................................................................................................................................1

STATEMENT OF FACTS AND ALLEGATIONS ........................................................................2

      A.      Plaintiffs' Underlying Action Against Defendant Target .......................................2

      B.      The Subpoena to Nonparty Symantec ......................................................................2

ARGUMENT ..............................................................................................................................................4

I.     THE SUBPOENA SHOULD BE QUASHED AND SYMANTEC SHOULD RECOVER ITS COSTS AS A SANCTION BECAUSE PLAINTIFFS' COUNSEL VIOLATED ITS DUTY TO AVOID UNDUE BURDEN. ..................................................4

      A.      The Subpoena Should be Quashed Because it Seeks Voluminous Information that Plaintiffs Must Seek from the Defendant in the Underlying Action. ........................................................................................................4

      B.      Symantec Should Recover Its Costs in Responding to the Subpoena Because Plaintiffs' Counsel Violated their Duty to Avoid Undue Burden. ............5

II.    IF THE SUBPOENA IS NOT QUASHED, THE SCOPE OF THE SUBPOENA SHOULD BE NARROWED. ........................................................................................................6

III.   IF THE SUBPOENA IS NOT QUASHED, THE COST OF COMPLIANCE MUST BE SHIFTED TO PLAINTIFFS BECAUSE IT IS "SIGNIFICANT." ..................7

CONCLUSION ..........................................................................................................................................8

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) ................................................................................................4

*Chevron Corp. v. Donziger*,
    No. 13-80038-CRB-NC,
    2013 WL 1402727 (N.D. Cal. Apr. 5, 2013) ................................................................................4

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
    163 F.R.D. 329 (N.D. Cal. 1995) ................................................................................................7

*In re Subpoena to Produce Documents of Clapp*,
    No. 14-80191-RS-JSC,
    2014 WL 3784112 (N.D. Cal. July 31, 2014) ........................................................................4, 6

*Legal Voice v. Stormans Inc.*,
    738 F.3d 1178 (9th Cir. 2013) (*Legal Voice II*) ..................................................................6, 7, 8

*Legal Voice v. Stormans Inc.*,
    757 F.3d 1015 (9th Cir. 2014) (*Legal Voice III*) ........................................................................8

*Linder v. Calero-Portocarrero*,
    251 F.3d 178 (D.C. Cir. 2001) ....................................................................................................8

*Mattel Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ......................................................................................................6

*Optimize Tech. Solutions, LLC v. Staples, Inc.*,
    No. 14-80095-LHK-HRL,
    2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) ........................................................................4, 6

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) ....................................................................................................4

**RULES**

Fed. R. Civ. P. 26(b)(2)(C)(i) ..............................................................................................................4

Fed. R. Civ. P. 45(d)(1) ......................................................................................................................6

Fed. R. Civ. P. 45(d)(2)(B)(ii) ........................................................................................................7, 8

Fed. R. Civ. P. 45(d)(3)(A) ................................................................................................................4

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that as soon as counsel may be heard in the United States District Court for the Northern District of California, nonparty Symantec Corporation ("Symantec") will, and hereby does, move the Court for an order quashing the subpoena ("the Subpoena") directed to Symantec that issued on September 16, 2014 by the plaintiffs ("Plaintiffs") in the Underlying Action (Case No. 14-md-02522-PAM pending in the District of Minnesota), and for an order awarding Symantec its costs and fees incurred in responding to and challenging the Subpoena. Symantec alternatively asks the Court for a protective order narrowing the scope of the requested discovery and shifting the costs of compliance with the Subpoena. This motion is made pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure. Pursuant to Civil Local Rule 37-1, counsel met and conferred on October 21, 2014 and were unable to resolve the issues that are the subject of this motion.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Anthony Weibell filed herewith, all pleadings and papers on file in the Underlying Action, oral argument of counsel, and any other matter which may be submitted at the hearing.

**STATEMENT OF THE ISSUES**

1. Should the Subpoena to Symantec be quashed under Fed. R. Civ. P. 45(d)(3)(A) because it is unduly burdensome in seeking information that can and should be sought from a party to the Underlying Action?

2. If the Subpoena is quashed, should Symantec be awarded fees and costs incurred in responding to the Subpoena under Fed. R. Civ. P. 45(d)(1) as a sanction for Plaintiffs' counsel's violation of their duty to avoid undue burden to Symantec?

3. If the Subpoena is not quashed, should the Court enter a protective order that narrows the scope of the requested discovery to information material to Plaintiffs' allegations?

4. If the Subpoena is not quashed, should the Court enter a protective order under Fed. R. Civ. P. Rule 45(d)(2)(B)(ii) that shifts any "significant" cost of compliance, including attorneys' fees, to Plaintiffs?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

By this motion, Symantec moves to quash a badly misguided subpoena. Plaintiffs in the Underlying Action have simply ignored their obligation to minimize the burden and expense of discovery on a nonparty. Instead, immediately at the outset of their case, they have demanded that Symantec, a nonparty, produce a host of information that Plaintiffs can readily obtain and must therefore seek first from their litigation adversary.

The Underlying Action is a multi-district litigation against Target Corporation ("Target") arising from a data breach at Target in December 2013. Just three weeks after filing their operative complaint, before obtaining *any* discovery from Target (indeed, before the parties have even finalized their discovery plan), and before resolution of Target's motion to dismiss (which could render the Subpoena moot), Plaintiffs served Symantec with a nonparty subpoena that demands virtually all documents and communications relating to or exchanged between Symantec and Target, a significant Symantec customer. That is improper. Courts here and elsewhere have repeatedly held that nonparty subpoenas may not be used to obtain discovery that can first be sought from a party to the litigation.

Not only is the subpoena premature, it is also grossly overbroad. In their 355-paragraph, 123-page complaint against Target, Plaintiffs make just one allegation that has anything to do with Target's use of Symantec software: "On November 30, 2013 ... Target's antivirus system, Symantec Endpoint Protection ... identified ... suspicious behavior." Yet despite this narrow allegation, Plaintiffs' subpoena broadly seeks all information and communications concerning every single product and service ever provided to Target by Symantec and all of Symantec's interactions with Target on any subject connected thereto. The subpoena thus far exceeds the bounds of permissible discovery.

Given these defects, Symantec met and conferred with Plaintiffs' counsel to ask that the Subpoena be withdrawn and specifically referenced the significant costs that compliance would impose on Symantec. Plaintiffs refused to withdraw the Subpoena and refused to cover Symantec's costs. Because Plaintiffs have violated their duty to take reasonable steps to avoid

imposing undue burden on a nonparty, the Subpoena should be quashed and Symantec should recover the fees it has incurred in responding to and challenging the Subpoena.

If the Subpoena is not quashed, the Federal Rules require that the scope of information sought by the Subpoena be narrowed to only that information that "is relevant and material" to the allegation Plaintiffs have made that involves a Symantec product. The Federal Rules also mandate that the cost of compliance with the Subpoena, including attorneys' fees, be shifted to Plaintiffs because the cost of compliance for Symantec, estimated to exceed $25,000 (not including an additional estimated $25,000 to litigate this motion), will be "significant."

## STATEMENT OF FACTS AND ALLEGATIONS

### A. Plaintiffs' Underlying Action Against Defendant Target

In their Underlying Action against defendant Target, Plaintiffs allege that "[b]etween approximately November 15, 2013 and December 17, 2013, Target was subject to one of the largest data breaches in history" ("the Breach"), "when hackers stole the personal and financial information of up to 110 million Target customers." Weibell Decl. Ex. 3 ¶ 1. Plaintiffs assert several claims against Target for allegedly "failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take available steps to prevent and stop the breach from ever happening, failing to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard customers' financial account and personal data, and failing to provide timely and adequate notice of the Target data breach." *Id.* In their 355-paragraph, 123-page complaint against Target, Plaintiffs allege numerous points along the chain of events at which they contend Target could have prevented or stopped the Breach. *See* Weibell Decl. Ex. 3 ¶¶ 123-170. But they make just one allegation that has anything to do with Target's use of Symantec software: "On November 30, 2013 ... Target's antivirus system, Symantec Endpoint Protection ... identified ... suspicious behavior," but "Target ... took no action pursuant to [this] warning." Weibell Decl. Ex. 3 ¶ 156.

### B. The Subpoena to Nonparty Symantec

On September 16, 2014—just three weeks after Plaintiffs filed the operative complaint in the Underlying Action—Plaintiffs' counsel issued a subpoena directed to nonparty Symantec.

Weibell Decl. Ex. 1. Plaintiffs issued the Subpoena before they obtained any discovery from Target, before the parties finalized their Rule 26(f) discovery plan, and before resolution of Target's motions to dismiss. *See* Weibell Decl. Exs. 4-5. Despite the narrow allegation referencing Symantec software in their complaint, Plaintiffs' Subpoena contains 13 requests for production that broadly seek virtually all information Symantec knows about Target, regardless of any relevance to the single allegation in the complaint that mentions Symantec software. For example, the Subpoena asks for voluminous documents about *all* software, services, and products provided to Target by Symantec—not just information about the single software product identified in the complaint—as well as tedious and irrelevant information concerning every product and service, such as:

- "All documents sent to or received from Target concerning the installation, setup, configuration, specifications, upgrading, testing, monitoring, troubleshooting, or support of each of [Symantec's] products";

- "All product documentation, including specifications, manuals, and user guides for any [Symantec] products or software applications that Target purchased, licensed, acquired, installed, or utilized";

- "All documents concerning any policies, protocols, recommendations, analysis, or training that Symantec provided to Target regarding data retention and/or the security of Target's Computer Systems or Computer Network"; and

- "All documents that [Symantec] received from or provided to Target which describe the security measures, policies, and procedures for accessing Target's Computer Systems" "the period of time the goods or services were utilized, the price(s) paid, as well as a copy of the contract or agreement applicable to the goods or services."

Weibell Decl. Ex. 1 at 10-11.

Not only do the requests seek information that has nothing to do with Plaintiffs' allegations, but to the extent that any of the information sought by Plaintiffs is relevant to their allegations, Plaintiffs can get that information directly from Target. Indeed, during Symantec's meet and confer with Plaintiffs' counsel, Plaintiffs' counsel conceded that they may be able to get the subpoenaed information from Target, but that they still wanted to compel nonparty Symantec to produce this information. Weibell Decl. ¶ 8.

# ARGUMENT

## I. THE SUBPOENA SHOULD BE QUASHED AND SYMANTEC SHOULD RECOVER ITS COSTS AS A SANCTION BECAUSE PLAINTIFFS' COUNSEL VIOLATED ITS DUTY TO AVOID UNDUE BURDEN.

### A. The Subpoena Should be Quashed Because it Seeks Voluminous Information that Plaintiffs Must Seek from the Defendant in the Underlying Action.

The Subpoena to nonparty Symantec should be quashed as imposing an undue burden because the voluminous information it seeks (if discoverable at all) should be obtained directly from defendant Target. Pursuant to Rule 45, "the court for the district where compliance is required must quash or modify a subpoena that ... subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Pursuant to Rule 26, the court "must" also preclude discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (limitations set forth in Rule 26(b)(2)(C) apply to discovery served on nonparties by subpoena).

Following the mandates of Rule 26 and Rule 45, Courts regularly quash subpoenas that ask a nonparty to search for and produce documents that should first be sought from a party to the litigation. *In re Subpoena to Produce Documents of Clapp*, No. 14-80191-RS-JSC, 2014 WL 3784112, at *4 (N.D. Cal. July 31, 2014) (quashing subpoena to nonparty that "sought to determine [a party's] knowledge [about the issue]" because this information could be obtained from the party itself); *Optimize Tech. Solutions, LLC v. Staples, Inc.*, No. 14-80095-LHK-HRL, 2014 WL 1477651, at *3 (N.D. Cal. Apr. 14, 2014) ("[A nonparty] is not required to produce [information that] is available from [a party]."); *Chevron Corp. v. Donziger*, No. 13-80038-CRB-NC, 2013 WL 1402727, at *6 (N.D. Cal. Apr. 5, 2013) (quashing subpoena because subpoenaing party had not shown that information sought was unavailable from parties to the underlying action or other sources); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party.").

This subpoena presents the same scenario. To the extent the information demanded is discoverable at all, Plaintiffs should be asking for it from Target, not Symantec in the first instance. Yet ten of Plaintiffs' requests for production expressly ask for Target's information:

No. 6:   "documents sent to or received from Target"

No. 7:   "documents that you sent to or received from Target"

No. 11:  "documents ... provided to or received from Target"

No. 12:  "notices or alerts that Target ... did receive"

No. 13:  "documents ... received from or provided to Target"

No. 4:   "product documentation ... for ... products ... Target purchased"

No. 5:   "recommendations, analysis, or training ... provided to Target"

No. 1:   "scope of services ... performed for Target"

No. 2:   "products, software or services Target utilized"

No. 3:   "Employees who consulted with or provided services to Target"

In their remaining three requests, Plaintiffs also seek Target's information (even though they do not expressly labeled it as such) because the only information within the scope of these requests that is relevant to the Underlying Action is information Symantec would have obtained from Target about how Target was using Symantec's products and how the breach occurred:

No. 8:   "your investigation regarding the Data Breach"

No. 9:   "documents and testimony that you produced to ... government"

No. 10:  "documents ... used to prepare any response to ... governmental ... inquiry"

Because it is unduly burdensome in asking a nonparty to produce information in the possession of a party to the Underlying Action, the Subpoena "must" be quashed under Rule 45(d)(3)(A) and Rule 26(b)(2)(C)(i).

**B.   Symantec Should Recover Its Costs in Responding to the Subpoena Because Plaintiffs' Counsel Violated their Duty to Avoid Undue Burden.**

In addition to quashing the Subpoena, the Court should award Symantec the attorneys' fees it incurred in responding to and moving to quash the Subpoena because Plaintiffs' counsel violated their duty to avoid undue burden to Symantec. A party that serves a subpoena has a duty

to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). Sanctions are appropriate "when a party issues a subpoena in bad faith, for an improper purpose, or *in a manner inconsistent with existing law*." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) (*Legal Voice II*) (emphasis added); *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming fee award where "subpoena was overly burdensome").

Here, Plaintiffs' counsel violated their duty by serving a subpoena that was unduly burdensome and "in a manner inconsistent with existing law" to obtain information that should be sought directly from defendant Target, as explained in Section I.A above. Plaintiffs reflexively served this subpoena at the very outset of the Underlying Action before completing negotiations over their discovery plan and before obtaining any discovery from Target. *See* Weibell Decl. Ex. 4. Plaintiffs also served the Subpoena while Target's motions to dismiss the complaints in the Underlying Action are still pending, which motions if granted will render the Subpoena moot. *See* Weibell Decl. Ex. 5. By serving a subpoena seeking information that should be sought from defendant Target, and by serving a subpoena at the outset of litigation without first attempting to get this discovery from defendant Target, Plaintiffs failed to "take reasonable steps to avoid imposing undue burden" on Symantec. They should therefore be sanctioned pursuant to Rule 45(d)(1) and ordered to reimburse Symantec for its costs and fees incurred in responding to and challenging the Subpoena.

## II. IF THE SUBPOENA IS NOT QUASHED, THE SCOPE OF THE SUBPOENA SHOULD BE NARROWED.

If the Subpoena is not quashed, the scope of the Subpoena should be narrowed to only that information that is relevant and material to the allegations that concern Symantec in the Underlying Action. "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *In re Subpoena to Produce Documents*, 2014 WL 3784112, at *4 (quoting *Optimize*, 2014 WL

1477651, at *2). "[I]f the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed ... would be by definition 'undue.'" *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

Plaintiffs' only allegation relevant to Symantec is the allegation that, on November 30, 2013, "Target's antivirus system, Symantec Endpoint Protection ... identified ... suspicious behavior." Weibell Decl. Ex. 3 ¶ 156. Consequently, the only information sought by the Subpoena that "is relevant and material to the allegations and claims at issue in the proceedings" is information that confirms whether Target had Symantec antivirus software running on its system during the relevant time and whether and to what extent that software warned Target of the breach that occurred on November 30, 2013. Anything else demanded in Plaintiffs' Subpoena is immaterial to what Plaintiffs have actually alleged. Therefore, if the Subpoena is not quashed, it should be limited to the following scope: documents sufficient to show (i) whether Target used Symantec antivirus software in November 2013, (ii) whether that software detected any suspicious activity on Target's system on or around November 30, 2013, and (iii) the content and nature of any alert to Target provided by the software concerning that suspicious activity on or around November 30, 2013.

### III. IF THE SUBPOENA IS NOT QUASHED, THE COST OF COMPLIANCE MUST BE SHIFTED TO PLAINTIFFS BECAUSE IT IS "SIGNIFICANT."

If the Subpoena is not quashed, in addition to narrowing the scope of the Subpoena, the cost of compliance with the Subpoena (even as narrowed) must be shifted to Plaintiffs because the costs are significant and estimated to exceed $25,000 (plus an additional estimated $25,000 to litigate this motion). Rule 45 "*requires* the district court to shift a non-party's costs of compliance with a subpoena" to the party that served the subpoena "if those costs are significant." *Legal Voice II*, 738 F.3d at 1184 (emphasis added) (citing Fed. R. Civ. P. 45(d)(2)(B)(ii) ("the order *must* protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" (emphasis added))). The costs to be shifted also

include costs and attorneys' fees incurred to challenge the subpoena. *Legal Voice v. Stormans Inc.*, 757 F.3d 1015, 1016 (9th Cir. 2014) (*Legal Voice III*).

"[T]he rule is mandatory." *Legal Voice II*, 738 F.3d at 1184. "Thus, when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *Id.* In shifting costs under this provision of Rule 45, the Court should *not* consider "whether compliance [is] unduly burdensome, the district court should ... consider[] only whether [the] cost [is] significant." *Id.* at 1185. A court that applies "the correct standard," should "have no trouble concluding that $20,000 is 'significant,'" and even "$9,000 may be sufficiently significant to justify cost-shifting." *Id.* (citing *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)).

Here, the costs of compliance with the Subpoena "must" be shifted to Plaintiffs under Rule 45(d)(2)(B)(ii) because the costs are "significant," as they are estimated to exceed $25,000, plus an additional estimated $25,000 to litigate this motion. *See* Weibell Decl. ¶¶ 4-7 (detailing the breakdown of the cost estimate). The combined $50,000 total of these minimum estimates greatly exceeds the $9,000 and $20,000 amounts the Ninth Circuit has recognized as "significant" in *Legal Voice II*. The $50,000 is an estimate of just the minimum amount that Symantec has and will spend to comply with the Subpoena and litigate this motion. *Id.* Because the Subpoena seeks information relating to a very sensitive issue for one of Symantec's large and highly-valued customers, it is therefore a sensitive area for Symantec that justifies a diligent and cautious effort by Symantec in responding to the Subpoena. *Id.* ¶ 3. Thus the estimated costs will only increase if the Subpoena is not narrowed as requested in Section II above. *Id.* ¶ 7.

## CONCLUSION

For the foregoing reasons, Symantec respectfully requests the Court to quash the Subpoena and award Symantec its costs and attorneys' fees in responding to and challenging the Subpoena; or in the alternative, to enter a protective order that narrows the scope of the Subpoena to the documents defined in Section II above, and that shifts the cost of compliance with the Subpoena, including attorneys' fees, to Plaintiffs, as required by Rule 45.

| | | |
|---|---|---|
| 1 | Dated: October 30, 2014 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation |
| 2 | | |
| 3 | | By:  */s/ Anthony J Weibell* |
| 4 | | Anthony J Weibell |
| 5 | | *Attorneys for Defendant*<br>SYMANTEC CORPORATION |