# EXHIBIT 1

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Minnesota

| | |
|---|---|
| In re Target Corp. Customer Data Sec. Breach Litig. ) <br> *Plaintiff* ) <br> v. ) <br> ) <br> _____ ) <br> *Defendant* ) | Civil Action No. 0:14-md-02522-PAM |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Symantec Corporation, 350 Ellis Street, Mountain View, CA 94043,
c/o Corporation Service Company, 2710 Gateway Oaks Drive Ste 150N, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

☒ *Production:* You, or your representatives, must also produce the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: **See Schedule A attached.** The documents, electronically stored information, or objects must be produced as follows:

| Place: Girard Gibbs LLP, c/o Matthew B. George <br> 601 California Street, 14th Floor <br> San Francisco, CA 94108 | Date and Time: <br> October 17, 2014 at 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: N/A | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 9/16/14

_____      OR      _____
*Signature of Clerk or Deputy Clerk*                    *Attorneys' signatures*

CLERK OF COURT

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Consumer Plaintiffs and Financial Institution Plaintiffs , who issues or requests this subpoena, are:

Joseph P. Guglielmo, Scott+Scott, Attorneys at Law, LLP, 405 Lexington Ave., 40th Floor, NY, NY 10174, 212-223-6444
Matthew B. George, Girard Gibbs LLP, 601 California Street, 14th Floor, San Francisco, CA 94108, 415-981-4800

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 0:14-md-02522-PAM

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

  I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

   ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

   ☐ I returned the subpoena unexecuted because: _____

_____

  Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

  I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### I. DEFINITIONS

1. "Financial Institution Plaintiffs" means the plaintiffs identified in the Consolidated Class Action Complaint filed on August 1, 2014 in *In re: Target Corporation Customer Data Security Breach Litigation*, 14-md-02522 (Dkt. 163).

2. "Consumer Plaintiffs" means the plaintiffs identified in the Consumer Plaintiffs' Consolidated Class Action Complaint filed on August 25, 2014, in *In re: Target Corporation Customer Data Security Breach Litigation*, 14-md-02522 (Dkt. 182).

3. "Plaintiffs" means the Financial Institution Plaintiffs and/or the Consumer Plaintiffs.

4. "Target" means "Defendant" means Target Corporation, Target Brands, Inc., Target Corporate Services, Inc., Target.com and any of their directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, consultants, investment advisors or bankers), and any other person purporting to act on their behalf. In the case of business entities, these defined terms include parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities and/or related entities or any other entity acting or purporting to act on their behalf.

5. "Action" means the case captioned *In re Target Corporation Customer Data Security Breach Litigation*, Case No. MDL 14-2522 (PAM/JJK) (D. Minn.) and each of the constituent actions transferred to and/or consolidated therein.

6. "Communication" means the transmittal (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) expressed by any means, and includes, without

limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, and postings of any type.

7. "Complaint" means the operative Consolidated Class Action Complaints in the Action.

8. "Computer Network" means the data network that connects the components of Your Computer System(s) between Target's corporate headquarters, Target's individual stores, and third parties.

9. "Computer System" includes, without limitation, any server (whether physical or virtual), desktop computer, laptop computer, tablet computer, point of sale system, debit card or credit card reader, payment processing system, smart phone, cellular telephone, Computer Network, networking equipment, internet site, intranet site, and the software, programs, applications, scripts, operating systems, or databases used to control, access, store, add, delete, or modify any information stored on any of the foregoing.

10. "Concerning" means any Document which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the request, including all Documents which reflect, refer, record, are in regard to, in connection with, specify, memorialize, relate, describe, discuss, consider, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the request.

11. "Customer Identifying Information" means information about Target's customers or potential customers including, without limitation, name, address, phone number, email address, date of birth, Social Security Number, account number (*e.g.*, bank, debit or credit card), Driver's License or other government identification number.

12. "Data Breach" means the unauthorized access to Payment Card Data or Customer Identifying Information that Target publicly announced on or about December 19, 2013.

13. "Document" is defined to include any document and ESI stored in any medium, and is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a)(l)(A), including, without limitation, electronic or computerized data compilations, electronic chats, instant messaging, email, other electronic stored information from personal computers, sound recordings, photographs, and hard copy documents maintained in your personal files.

14. "Electronic Media" means any magnetic, optical, or other storage media device used to record ESI including, without limitation, computer memory, hard disks, floppy disks, flash memory devices, CDs, DVDs, Blu-ray disks, cloud storage (*e.g.*, DropBox, Box, OneDrive, and SharePoint), tablet computers (*e.g.*, iPad, Kindle, Nook, and Samsung Galaxy), cellular or smart phones (*e.g.*, BlackBerry, iPhone, Samsung Galaxy), personal digital assistants, magnetic tapes of all types or any other means for digital storage and/or transmittal.

15. "Employee" means any current or former officer, director, or other person who is or was employed by you.

16. "ESI" or "Electronically Stored Information" means information that is stored in Electronic Media, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, without limitation, metadata, system data, deleted data, and fragmented data.

17. "Financial Institution" means banks, credit unions, and other institutions that issue credit cards, debit cards, bank cards or any other payment cards that were subject to the Data Breach.

18. "Identify," with respect to Persons, means to give, to the extent known, the Person's full name, present or last known address, telephone numbers, and when referring to a natural person, additionally, the present or last known place of employment. Once a Person has been identified in accordance with this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of that Person.

19. "Identify," with respect to Documents, means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; (d) author(s), (e) addressee(s), and (f) recipient(s).

20. "Including" means "including but not limited to" and "including without limitation."

21. "Meeting" means the contemporaneous presence, whether in person or through any means of communication, of any natural persons, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal, or occurred in connection with some other activity.

22. "Payment Card Data" means the information associated with a credit or debit card including, without limitation, customer name, credit or debit card number, card expiration date, CVV, debit card personal identification numbers ("PIN"), magnetic strip information, and any Customer Identifying Information.

23. "Payment Processing Company" includes, without limitation, Visa, Inc. ("Visa"), MasterCard Corporation ("MasterCard"), American Express Company ("AmEx"), Discover Financial Services ("Discover"), any other company that processes credit or debit card payments, and each of their respective directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, consultants, investment advisors or bankers), and any other person purporting to act on their behalf. In the case of business entities, these defined terms include parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities and/or related entities or any other entity acting or purporting to act on their behalf.

24. "PCI Standards" means the Payment Card Industry ("PCI") Data Security Standards ("DSS").

25. "Person" means any natural person or any business, legal or governmental entity or association.

26. "Referring" or the phrase "relating to" means all documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated, or maintained as a result of the subject matter of the request, including, without limitation, all documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review, or report on the subject matter of the request.

27. "Symantec," "you," or "your" means Symantec Corporation and any of its directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, consultants, investment advisors or bankers), and any other person purporting to act on their behalf. In the case of business entities, these defined terms include parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities and/or related entities or any other entity acting or purporting to act on their behalf.

## II. RULES OF CONSTRUCTION

1. "Any," "all," and "each" shall be construed as any, all and each.

2. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. The singular form of a noun or pronoun includes the plural form and vice versa.

4. The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

5. A term or word defined herein is meant to include both the lower and upper case reference to such term or word.

## III. INSTRUCTIONS

1. You are requested to produce all documents in your possession, custody, or control that are described below. In so doing, please furnish documents that are in the

possession of your partners, officers, employees, attorneys, accountants, representatives, or agents, or that are otherwise subject to your custody or control.

2. Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated or received, or those that otherwise came into existence any time during the time period described herein.

3. The production by one person, party, or entity of a document does not relieve another person, party, or entity from the obligation to produce his, her, or its own copy of that document, even if the two documents are identical.

4. In producing documents, you are requested to produce a copy of each original document together with a copy of all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

5. Documents shall be produced as they are kept in the usual course of business. All documents shall be produced with a copy of the file folder, envelope, or other container in which the documents are kept or maintained. All documents shall be produced intact in their original files, without disturbing the organization of documents employed during the conduct of the ordinary course of business and during the subsequent maintenance of the documents.

6. ESI shall be produced in accordance with the technical specifications set forth in Appendix A to the parties' Joint E-Discovery Stipulation submitted to the Court by the parties to the Action on June 18, 2014 (also attached as Appendix A to these Requests), unless otherwise agreed by the parties.

7. Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are

called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

8. Each document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to this request. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document that you have redacted.

9. If you assert an objection to any request, you must nonetheless respond and produce any responsive documents or ESI that are not subject to the stated objection. If you object to part of a request or category, you must specify the portion of the request to which you object, and must produce documents responsive to the remaining parts of the request.

10. If Symantec withholds documents or ESI otherwise discoverable under the Federal Rules of Civil Procedure by claiming that they are privileged or subject to protection as trial-preparation material, Symantec must make that claim in accordance with Federal Rule of Civil Procedure 45(e)(2). As to any document or ESI withheld on privilege or work product grounds, Symantec must also identify the author or originator, the addressees and/or recipients, the date, the nature of the document or ESI, the present custodian and location, and include a statement of the factual and legal reason(s) why the document or ESI is being withheld from production. The provisions governing the production of "Privileged Material" as defined in the operative Protective Order governing this matter (District of Minnesota MDL Case No. 14-2522 (PAM/JJK) Docket No. 92, sections IX and X), apply to documents produced in response to these requests.

11. If any document or ESI is known to have existed but no longer exists, has been destroyed, or is otherwise unavailable, You must identify the document or ESI, the reason

for its loss, destruction or unavailability, the name of each person known or reasonably believed by you to have present possession, custody, or control of the original and any copy thereof (if applicable), and a description of the disposition of each copy of the document or ESI.

12. If no document or ESI responsive to a request exists, please state that no responsive document or ESI exists.

13. Notwithstanding a claim that a document is protected from disclosure, any document so withheld must be produced with the portion claimed to be protected redacted.

14. These requests are continuing in nature and require supplemental response and production.

## IV. RELEVANT TIME PERIOD

The relevant time period for each Document Request is for November 1, 2011 through the date of responses (the "Relevant Time Period"), unless otherwise specifically indicated, and shall include all documents and information that relate to such period, even though prepared or published outside of the relevant time period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier or subsequent document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

## V. REQUESTS FOR PRODUCTION

1. Documents sufficient to show the scope of services that you performed for Target in connection with Target's purchase, license, or implementation of Symantec's Endpoint Detection System or any other Computer System security software.

2. Documents sufficient to identify which of your products, software or services Target utilized, purchased, acquired, or licensed, the period of time the goods or services were utilized, the price(s) paid, as well as a copy of the contract or agreement applicable to the goods or services.

3. Documents sufficient to identify each of your Employees who consulted with or provided services to Target.

4. All product documentation, including specifications, manuals, and user guides for any of your products or software applications that Target purchased, licensed, acquired, installed, or utilized.

5. All documents concerning any policies, protocols, recommendations, analysis, or training that Symantec provided to Target regarding data retention and/or the security of Target's Computer Systems or Computer Network.

6. All documents sent to or received from Target concerning the installation, setup, configuration, specifications, upgrading, testing, monitoring, troubleshooting, or support of each of your products utilized, purchased, or licensed by Target, including Target's specifications.

7. All documents that you sent to or received from Target or any third party concerning an assessment of the security or vulnerability of Target's Computer Systems.

8. All documents concerning your investigation regarding the Data Breach.

9. All documents and testimony that you produced to or received from any government entity or law enforcement concerning its investigation of the Data Breach, as well as any documents reflecting that testimony.

10. All documents that you used to prepare any response to any governmental entity's or law enforcement inquiry into the Data Breach.

11. All documents that you provided to or received from Target related to its investigation of the Data Breach, including any documents which explain your involvement in the Data Breach.

12. Documents concerning each of the notices or alerts that Target should have or did receive from you or that were generated by your products, services or software in connection with the Data Breach, including, but not limited to, the notices or alerts themselves.

13. All documents that you received from or provided to Target which describe the security measures, policies, and procedures for accessing Target's Computer Systems, including training materials and the scope of access rights.

# APPENDIX A

## Technical Specifications for Production

PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

For documents that have originated in paper format, the following specifications should be used for their production.

* Unless otherwise agreed, images should be produced as single page TIFF group IV format imaged at 300dpi.

* Parties may request that a reasonable number of documents be produced in color. Documents produced in color shall be produced as JPEG images with Exif compression and 24-bit color depth.

* Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

* Media may be delivered on CDs, DVDs, External USB hard drives, or via a file transfer site or FTP. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

* Each delivery should be accompanied by an image cross reference file that contains document breaks.

* A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

Field Separator, ASCII character 20: "¶"
Quote Character, ASCII character 254 "þ"
Multi-Entry Delimiter, ASCII character 174: "®"


* To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Documents that are redacted will be re-scanned using OCR Software following redaction and only OCR text of the redacted document will be produced. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

* A text cross reference load file should also be included with the production delivery that lists the beginning bates number of the document and the relative path to the text file for that document on the production media.

1

PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS

Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

For standard documents, emails, and presentations originating in electronic form, documents should be produced as tiff images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields where they exist in the file being produced:

Beginning Production Number

Ending Production Number

Beginning Attachment Range

Ending Attachment Range

Custodian

Other Custodian (if cross custodian de-duplication is employed)

Confidentiality Designation

Original Location Path

Email Folder Path

Document Type

Author

Page Count

File Name

File Size

Hash Value

Date Last Modified

Date Created

Date Last Accessed

Date Sent

Date Received

Recipients

Copyees

Blind Copyees

Email Subject

Path to Native File

Conversation Index or Message ID

- Extracted full text (not OCR text) should also be delivered for each electronic document. Documents that are redacted will be re-scanned using OCR Software following redaction and OCR text of the redacted document will be produced instead of extracted full text. The extracted full text or OCR text of redacted documents should be delivered on a document level according to the specifications above similar to paper documents.

- Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The file name should match the bates number assigned to the file. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions or hearings (such as converting to tiff images in accordance with the above protocol).

- Notwithstanding the language of Federal Rule of Civil Procedure 34, upon review the requesting party may ask for certain other documents and\or databases that were initially

3

produced in their petrified (tiff or pdf) format to be produced in their native format in the event that the petrified version is not reasonably usable. If this is the case, the requesting party will submit in good faith a list of bates numbers identifying the documents. The documents should be produced in their unaltered (to the extent possible) native format with an accompanying text delimited text file (using the delimiters above) that contains the following fields:

Beginning Production Number

Ending Production Number

Beginning Attachment Range

Ending Attachment Range

Path to Native File

MD5 Hash Value

## PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA

Generally, databases should be produced in a mutually agreeable data exchange format. To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information, to the extent the information exists and is readily available:

Database Name

Type of Database

Software Platform

Software Version

Business Purpose

Users

Size in Records

Size in Gigabytes

A List of Standard Reports

Database Owner or Administrator's Name

Field List

Field Definitions (including field type, size and use)

Upon review of the list, the parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.