1  DAVID H. KRAMER, State Bar No. 168452
   ANTHONY J WEIBELL, State Bar No. 238850
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5  Email: dkramer@wsgr.com; aweibell@wsgr.com;

6  *Attorneys for Nonparty*
   SYMANTEC CORPORATION
7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         SAN FRANCISCO DIVISION

12 | IN RE: | MISC. CASE NO.: 14-mc-80302 |
|---|---|
13 | TARGET CORPORATION CUSTOMER DATA SECURITY BREACH LITIGATION | Underlying Case No. 14-md-02522-PAM pending in the District of Minnesota ("the Underlying Action") |
14 | | |
15 | | **DECLARATION OF ANTHONY WEIBELL IN SUPPORT OF SYMANTEC CORPORATION'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER** |
16 | | |
17 | | |
18 | | |
19 | | Date:   TBD |
20 | | Time:   TBD<br>Judge:  TBD |

WEIBELL DECL. ISO SYMANTEC'S
MOTION TO QUASH AND FOR PROTECTIVE ORDER

I, Anthony Weibell, declare and state as follows:

1. I am an attorney at Wilson Sonsini Goodrich and Rosati, counsel to nonparty Symantec Corporation ("Symantec") in this miscellaneous action. I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify thereto.

2. I have represented clients in large, complex class actions for more than nine years and have assisted clients in responding to discovery requests in numerous complex civil actions, including responding to nonparty subpoenas. I am readily familiar with the tasks and effort involved in complying with subpoenas like the Subpoena served by Plaintiffs. I have represented Symantec in prior litigation and am generally aware of how it normally maintains and transmits information, the amount of attorney-client privileged communications associated with matters like those at issue in the Subpoena, and the time required to locate, collect, review, and prepare information for production in response to discovery requests. I am often involved in preparing estimates for litigation costs and fees, including costs and fees estimated to comply with discovery requests.

3. I have reviewed the Subpoena to Symantec. The Subpoena seeks information relating to a very sensitive issue for one of Symantec's large and highly-valued customers and is thus a sensitive area for Symantec that justifies a diligent and cautious effort by Symantec in responding to the Subpoena. I have estimated that compliance with the Subpoena would likely require the review and production of potentially thousands of documents (most of which would be immaterial and/or irrelevant to the Underlying Action), such as voluminous documents that reflect the different products and services provided to Target by Symantec (Request Nos. 1-2); documents identifying every Symantec employee that has consulted with or provided services to Target (Request No. 3); voluminous product specifications, manuals, and user guides for multiple products and versions of products (Request No. 4); all documents concerning any policies, protocols, recommendations, analysis, or training provided to Target (Request No. 5); voluminous communications between Symantec and Target (Request Nos. 6, 7, 11, 13); and others. I believe that compliance with the Subpoena's broad requests on a broad range of topics will re-

WEIBELL DECL. ISO SYMANTEC'S   -1-
MOTION TO QUASH AND FOR PROTECTIVE ORDER

quire Symantec to conduct multiple interviews with multiple employees across multiple business units.

4. Based upon my initial review of the Subpoena and based on my experience described above, I estimated that Symantec would incur a minimum of $25,000 in fees and costs to respond to the Subpoena and included that estimate in Symantec's objections to the Subpoena. The $25,000 minimum estimate included an estimated minimum $5,000 of e-discovery costs associated with preparing documents for production. Because the volume of documents to be processed for production is yet to be determined, this estimate was based solely on the very basic costs I have seen in recent litigation, rates charged by my firm's internal e-discovery processing team, and estimates reported by third parties. *See, e.g.*, FTI Consulting, *Budgeting For E-Discovery: Understanding Pricing Models for Cost Control and Transparency* (Oct. 23, 2014), http://www.ftitechnology.com/doc/White-Papers/whitepaper-budgeting-for-e-discovery-2011.pdf; George Carry, *Technology: Preparing and managing a budget for e-discovery*, Inside Counsel Magazine (Oct. 23, 2014), http://www.insidecounsel.com/2012/08/03/technology-preparing-and-managing-a-budget-for-e-d.

5. The $25,000 minimum estimate also included an estimated 30 hours of my time at my standard billing rate to perform tasks such as (i) reviewing and analyzing the Subpoena (1 hour), (ii) researching and drafting the response and objections to the Subpoena (4 hours), (iii) interviewing witnesses regarding the information requested in the Subpoena (10 hours), (iv) counseling with in-house counsel regarding employee interviews (2 hours), (v) counseling with in-house counsel regarding the preservation, collection, review, and production of information responsive to the Subpoena (3 hours), (vi) reviewing documents for production in response to the Subpoena (8 hours), and (vii) participating in conferences with counsel for Plaintiffs and counsel for Target regarding the Subpoena (2 hours).

6. The $25,000 minimum estimate did not include (i) fees and costs associated with Symantec's motion to quash (estimated to itself exceed $25,000 for researching (10 hours), writing and revising the briefs (25 hours), and arguing the motion (3 hours)), (ii) fees and costs in-

curred to prepare the privilege log demanded by Plaintiffs (which cannot be estimated until the volume of privileged materials is determined, but assuming at least 10 hours of attorney or paralegal time, it would be at least $2,500 to $7,000), (iii) the value of Symantec's in-house counsel time and other in-house resources that would be spent to comply with the Subpoena (which would approximately mirror the cost of outside counsel's fees), or (iv) any fees and costs incurred for currently unknown and unanticipated tasks and for difficulties in locating, collecting, and reviewing responsive information.

7. Based on the limited investigation that has taken place at this early stage, I expect that the costs and fees of compliance with the subpoena will exceed $50,000 when factoring in the costs of litigating Symantec' motion to quash as described above. Even if the requests were narrowed as requested in Symantec's motion, the estimate for compliance with the Subpoena would still exceed $50,000 because the remaining portion of the requests will still require more than 30 hours of my time to conduct the required investigation, collection, and review, plus the costs of reproduction, plus the costs described in paragraph 6 above. Narrowing the scope of the requests will substantially reduce the total costs of compliance, but would not reduce them below the estimated $50,000 described above. The estimated costs will only increase if the Subpoena is not narrowed as requested in Symantec's motion.

8. On behalf of Symantec, I participated in a meet and confer with counsel for Plaintiffs on October 21, 2014. At least four attorneys representing Plaintiffs also participated in the meet and confer. During the meet and confer, the parties were unable to resolve the issues that are the subject of Symantec's motion. Specifically, Plaintiffs' counsel refused to withdraw the Subpoena, refused to bear the significant costs of compliance with the Subpoena, and have not yet agreed to narrow most of the overbroad aspects of the Subpoena. Plaintiffs' counsel conceded that they may be able to get the subpoenaed information from Target, but that they still wanted to compel nonparty Symantec to produce this information. Although Plaintiffs said they would consider narrowing certain aspects of the Subpoena, they have not yet done so; and it is unclear to what extent they are even considering narrowing any requests.

WEIBELL DECL. ISO SYMANTEC'S  
MOTION TO QUASH AND FOR PROTECTIVE ORDER -3-

9. Attached as Exhibit 1 hereto is a true and correct copy of the Subpoena.

10. Attached as Exhibit 2 hereto is a true and correct copy of Symantec's objections to the Subpoena.

11. Attached as Exhibit 3 hereto is a true and correct copy of excerpts from the operative complaint filed as ECF No. 182 in the Underlying Action.

12. Attached as Exhibit 4 hereto is a true and correct copy of a discovery dispute letter filed as ECF No. 212 in the Underlying Action.

13. Attached as Exhibit 5 hereto are true and correct copies of the pending motions to dismiss filed as ECF No. 183 and ECF No. 202 in the Underlying Action.

14. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct according to my information and belief.

Dated: October 30, 2014     By:     /s/ Anthony Weibell
                                    Anthony Weibell

WEIBELL DECL. ISO SYMANTEC'S
MOTION TO QUASH AND FOR PROTECTIVE ORDER                -4-